JOHN HOWELL v. THE STATE.

No. 3647. Decided May 20, 1908.

Local Option—Charge of Court—Defensive Theory.

Where upon trial of a violation of the local option law the evidence raised the issue that the prosecuting witness went into the defendant's wareroom and took the whisky without defendant's consent, the court should have submitted a requested charge upon this issue.

Appeal from the County Court of Brown. Tried below before the Hon. A. M. Brumfield.

Appeal from a conviction of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*Harrison & Wayman*, for appellant.—On question of refusing requested charge: Bennett v. State, 34 S. W. Rep., 936; Wadsworth v. State, 35 Texas Crim. Rep., 584; 34 S. W. Rep., 934; Hood v. State,

35 Texas Crim. Rep., 585; 34 S. W. Rep., 935; Thompson v. State, 34 S. W. Rep., 937; Wright v. State, 35 Texas Crim. Rep., 581; 34 S. W. Rep., 935; Jackson v. State, 15 Texas Crim. App., 84; White v. State, 18 Texas Crim. App., 57; Irvine v. State, 20 Texas Crim. App., 12; Ladwig v. State, 40 Texas Crim. Rep., 585; 51 S. W. Rep., 390; Mills v. State, 82 S. W. Rep., 1045; White's Code Criminal Procedure article 715, secs., 794, 798, 801, subdivisions 1, 2 and 3.

*F. J. McCord*, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of violating the local option law.

The witness McCauley testified that about the first of February he told appellant that he desired to purchase a quart of whisky; that appellant set out a quart bottle of whisky on the counter and he, witness, either handed him $1.25 or laid it on the counter in front of him, took the whisky and went away. On cross-examination he admitted that he had just returned from New Mexico; that he left the little village of Grosvenor about two weeks ago to go to New Mexico; that his father had gone after him and brought him back to Brownwood; that he was not fleeing from any prosecution in going to New Mexico and had not been directly promised immunity from prosecution for giving whisky to minors. He states, however, that the county attorney indirectly promised him immunity from prosecution if he would disclose from whom he got the whisky; that one Graves, a friend of the witness, had also been threatened with prosecution for giving liquor to minors and that Graves had come to Brownwood a few days before witness came down to make complaint in this case, and had made complaint against appellant, and upon his, witness', return to Grosvenor, Graves had told him that the county attorney would not prosecute either witness or Graves if they would disclose where they had gotten the whisky. This witness admitted giving whisky to minors and further admitted getting a shipment of whisky, along in the early part of March; that the package contained several quarts; that half of it belonged to him and the other half to Graves; that the appellant had nothing to do with shipping this whisky. He further testified that appellant had a warehouse, built as a shed room to his store but that there was no entrance from the store direct to the wareroom, there being a door at the back end of the warehouse and that in order to get into the warehouse they went out of the back door to the storeroom and across to the door leading into the back of the warehouse; that it was unlocked during the day and often stood open or partly so and that he had observed it in that condition and denied going into the storeroom and taking a bottle of whisky out of the package in the storeroom that was covered up with chops in an icebox. It was shown that Keeler had been delivered a package of whisky for the witness McCauley along about the 4th of March that had been shipped from Cincinnati, Ohio,

pursuant to an order given by McCauley, and Keeler testified that this whisky had been carried by him to the little village of Grosvenor and delivered to McCauley on the evening of March 5th. The county attorney, McGaugh, testified that the father of Graves, the party referred to by the prosecuting witness, came into his office a few days before the prosecuting witness came in and gave him information upon which this prosecution is predicated and told him, the county attorney, that his boy, Tom Graves, and Walter McCauley were under suspicion for giving whisky to minors, and that it was believed that they got the whisky from appellant; that he thought they could be induced to inform on appellant if they were promised immunity from punishment for giving whisky to minors; that he then promised the elder Graves that he would not prosecute either said Tom Graves or McCauley for anything they may have done with any whisky up to that time if they would inform as to where they got the whisky; that he thought Tom Graves was present part of the time during this conversation, but did not know whether he heard it all or not; that a few days subsequently, witness McCauley came to his office accompanied by said Tom Graves and gave the information upon which the prosecution in this case is predicated, but he made no direct promise to said Graves. Blevens testified that appellant at his suggestion, ordered some whisky for him while he, appellant, was making an order for drugs; that he had him to order four quarts, giving him three dollars to pay for it; that that was the cost price, 75 cents a quart; that this whisky came sometime during the month of March and upon his making inquiry about it appellant told him it was in the wareroom in an icebox; that he went in, raised the lid and found a package which he carried to the light; that it had contained four bottles of whisky but that two of the bottles were gone; that he took out the other two bottles; that this was Anderson County whisky and had a picture of a barrel on the label; that he went into appellant's store and told him that a part of his whisky was gone at which appellant gave an exclamation of surprise and stated that he knew it was there the day before because he had seen it there; that there was something in the icebox that he supposed to be sawdust but he could not see it, it being too dark in the wareroom and the wareroom containing no windows. Appellant testified denying the transaction in regard to selling any whisky to McCauley and that if McCauley got any Anderson County whisky about his store that he took it without his knowledge or consent and never paid him for it; that he did not have any whisky on hand at the time mentioned by McCauley; along about the latter part of February or the first of March he had made an order for whisky for Blevins, at Blevins's request; that said whisky was ordered from a drug house in Dallas; that when it came he took it to the wareroom and set it in an abandoned icechest and it stayed there for a day or two; that while it was in the icechest, he, appellant, discovered that a sack of chops that he had there had been gnawed by the rats and was leaking in several places; that he picked up these chops

and poured them into the icechest in order to protect it from the rats and in doing so covered up the package of whisky; that no one ever had his permission to take any whisky out of said package. On cross-examination he said that this was not the first whisky that had been stolen from his store; that on prior occasions some had been stolen, but he never knew who got it; that whisky had also been stolen from other parties in Grosvenor. It seems from his testimony that it was a common occurence for whisky to be stolen in Grosvenor, as several instances are mentioned by this witness. On cross-examination of the witness Blevins, by the State, over the objection of appellant, said witness was permitted to state that he had, before the transaction in question in this case with the knowledge and consent of appellant, been in the habit of storing in the shedroom intoxicating liquors belonging to him, Blevins, and going in there and drinking same at his pleasure. Objections were urged to this on several grounds.

The State was permitted also, over the objection of appellant, to further prove by the witness Blevins that he knew other persons had stored whisky in the room where he had stored the whisky in question, because he had seen appellant's brother take a cask of whisky out of said room and put it in appellant's wagon, and that he rode home with him in said wagon with appellant's brother and that his said brother opened the cask of whisky on the way home and gave him a drink out of one of the bottles and that said bottle contained whisky. Several objections were urged to the introduction of this testimony. The writer is of opinion that this evidence should have been rejected. It was in no way connected with this transaction upon which the conviction was sought, it had no reference to any system of selling and the fact that appellant permitted Blevins to keep whisky in his wareroom and go in and take a drink, or the fact that he had ordered a cask of whisky for his brother, who had taken it home, could not be germane or relevant to the sale of whisky to McCauley; they were in nowise connected, directly or indirectly. There was no contention that appellant was keeping this whisky in the shedroom for sale, and we are of opinion that this testimony was prejudicial. We are of opinion further, that the court should have charged the jury, as requested by appellant, that if McCauley went into the wareroom and took the whisky in question without appellant's consent that the appellant should be acquitted. Appellant stated that he did not sell McCauley any whisky; that he had no whisky for sale and that the whisky that he had ordered for Blevins had disappeared, or some of it. Appellant also states that he knew of the fact that this door was open. We are of opinion that this testimony was sufficient to require the court to charge the jury that if they believed McCauley took the whisky from the wareroom and did not buy it from appellant that he should be acquitted.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*